232 N.J. Super. 353 (1989)
556 A.2d 1325
STATE OF NEW JERSEY, PLAINTIFF,
v.
PATRICIA L. HILL AND DAVID STAMPS, DEFENDANTS.
Superior Court of New Jersey, Law Division Somerset County.
Decided February 7, 1989.
*354 Lori Spagnoli for plaintiff (Nicholas L. Bissell, Jr., Prosecutor of Somerset County, Atty.).
Frank J. Stanley, III, and Joan G. Geiger for defendant Patricia Hill.
IMBRIANI, J.S.C.
N.J.S.A. 9:6-8.10 requires any person who has reasonable cause to believe that a child has been subjected to child abuse or acts of child abuse to report such conduct to the Division of Youth and Family Services by telephone or otherwise. Child abuse is defined as the unnecessary infliction of suffering or pain, mental or physical, upon a child. N.J.S.A. 9:6-8.14. To encourage the making of such reports the Legislature provided that:
Anyone acting pursuant to this act in the making of a report under this act shall have immunity from liability, civil or criminal, that might otherwise be incurred or imposed. Any such person shall have the same immunity with respect to testimony given in any judicial proceeding resulting from such a report. [N.J.S.A. 9:6-8.13]
The novel issue in this case, which has never been addressed by our courts, is whether a mother who was indicted on seven counts of endangering the welfare of her two-year-old daughter, L.H., in violation of N.J.S.A. 2C:24-4a, and one count of *355 attempting to hinder prosecution, in violation of N.J.S.A. 2C:5-1 and 2C:29-3a, is entitled to immunity pursuant to N.J.S.A. 9:6-8.13 because she reported to the police, acts of child abuse committed during this same period of time by her live-in boyfriend and co-defendant, David Stamps. We hold she is not entitled to immunity.
On November 17, 1987 at approximately 7:00 a.m. defendant, Patricia Hill, called the police to report that David Stamps had abused her daughter. A hospital examination of the child revealed multiple injuries, including lacerations, cuts, bruises of the mouth, face and body which required the child to be hospitalized for three days. The report of the examining physician concluded that the injuries to the child:
were of such a severity and such location that they could have potentially led to a fatal outcome or incapacitating injury of a permanent nature due to brain injury or loss of vision.
David Stamps was indicted on three counts of endangering the welfare of a child, one count of attempting to hinder prosecution and one count of aggravated assault which alleges he:
did purposely or knowingly cause serious bodily injury to L.H. and/or under circumstances manifesting extreme indifference to the value of human life, did recklessly cause serious bodily injury to L.H., contrary to the provisions of N.J.S.A. 2C:12-1b(1).
Defendant contends that the conduct of David Stamps constituted child abuse which she was required to report to the authorities and, consequently, she is entitled to the statutory immunity. Although the report was made to the police and not the Division of Youth and Family Services, as literally required by the statute, defendant argues that the distinction is one of form and not of substance because a police officer who receives a complaint of child abuse must report such information to the Division of Youth and Family Services. N.J.S.A. 9:6-8.25(b). Thus, she contends that her report to the police constitutes substantial compliance with the statute.
The Legislature obviously recognized that reports of child abuse frequently are not made because of the understandable reluctance of many persons to expose themselves to suits for *356 slander or malicious prosecution if their accusations are not proven. To overcome this reluctance and encourage the making of such reports, the statute grants absolute immunity, both criminal and civil, to persons making such reports. But did the Legislature intend to allow a person who has abused or endangered a child to report acts of child abuse, whether committed by a co-defendant or the person making the report, and thereby immunize oneself from criminal prosecution?
The duty to make such reports is not limited to professional persons, friends or neighbors, who are the persons ordinarily more apt to observe and detect evidence of child abuse, but is required of every citizen. Thus, one could argue that the grant of immunity is without limitation and extends to any person making such a report on the assumption that the intent of the Legislature was to protect children even if it resulted in immunizing the child abuser.
A literal reading of the act reveals that immunity extends only to potential civil and criminal liability that could arise from the "making of a report." It does not explicitly immunize the underlying offense against the child. Consequently, the acts of committing child abuse and reporting child abuse must be viewed separately and independently. If the Legislature intended to extend immunity to the criminal conduct which formed the basis of the report it could have easily said so. As Judge Learned Hand said in his oft-quoted remark, "there is no surer way to misread any document than to read it literally." Guiseppi v. Walling, 144 F.2d 608, 624 (2 Cir.1944). The key issue is what did the Legislature intend and an elementary rule of statutory construction is that:
a statute ... should not be read literally when such a reading defies logic and leads to a result that is contrary to its purposes. [Transamerica Ins. Co. v. National Roofing, Inc., 108 N.J. 59, 64 (1987)]
We could find only two states which have addressed this problem and both concluded, when construing a virtually similar immunity statute, that it does not cover the underlying *357 criminal conduct even if it was the offender who reported the violation to the proper authorities. State v. Howland, 125 N.H. 497, 484 A.2d 1076 (1984) held that a defendant who allegedly abused a child and subsequently reported the act in "good faith" to the proper authorities was not entitled to immunity because:
if the legislature had intended to extend the immunity to the underlying child abuse, it would have expressly done so in the language of the statute. [Id. at 1077]
Similarly, Austin v. State, 179 Ga. App. 235, 345 S.E.2d 688 (1986) held that the statutory immunity:
clearly is applicable only to such civil or criminal liability as might otherwise result from the act of reporting suspected child molestation or abuse not to such criminal liability as may arise from the commission of the molestation or abuse itself. [Id. 345 S.E.2d at 689]
We believe that the primary intent of the Legislature was to immunize individuals, such as doctors, psychologists, teachers and the like, who come into contact with children by reason of their professional employment, as well as persons such as relatives, friends and neighbors, who come into contact with children by reason of their social and physical proximity. These are the types of people who frequently hear or observe acts of child abuse. Absent immunity, such persons are ordinarily reluctant to report their concerns to the proper authorities because they cannot prove the acts of child abuse. Yet, it is frequently tenuous accusations from sources such as these which, if thoroughly investigated, could develop evidence of abuse and molestation. It is to protect persons such as these from potential civil and criminal liability that the statute was adopted.
The concerns of exposure to criminal or civil liability of those with knowledge or suspicion of child abuse is real and the immunity statute has been pleaded to protect persons who make such reports. For instance, it has been held that a physician who reported suspected child abuse by parents to the Division of Youth and Family Services was granted absolute immunity under the statute even if, as alleged in the complaint, *358 he "acted with malice in making the report." Rubinstein v. Baron, 219 N.J. Super. 129, 134 (Law Div. 1987).
In Krikorian v. Barry, 242 Cal. Rptr. 312, 196 Cal. App.3d 1211 (Ct.App. 1987) immunity was similarly granted to a licensed clinical psychologist charged with negligence and intentional infliction of emotional distress for reporting to the California Department of Social Services that the owner of a pre-school had sexually molested nine students while attending such school. The court noted the statutory duty of a psychologist to render such reports and concluded that:
... the Legislature considered the possibility that professional fear of civil liability for the failure to report might result in misleading or incorrect reports, but determined that the protection given to the children would outweigh any inconvenience or harm to innocent parties caused by a child abuse investigation. [Id. 242 Cal. Rptr. at 319]
Accordingly, we hold that the immunity granted by N.J.S.A. 9:6-8.13 extends only to civil or criminal liability that may arise from "the making of a report" of child abuse and it does not extend to any underlying criminal offense committed by the person making the report.